In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-07-00393-CR


____________________



JOHN KEITH HOLMES, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the County Court at Law No. 2


Orange County, Texas


Trial Cause No. E94069






 OPINION


 A jury found John Keith Holmes guilty of misdemeanor assault and assessed 
punishment at one year's confinement in the county jail and a fine of $4000. See Tex. Pen.
Code Ann. § 12.21 (Vernon 2003), § 22.01(a)(1) (Vernon Supp. 2008). Raising one issue,
Holmes appeals the trial court's denial of his motion for new trial and contends he received
ineffective assistance of counsel. We reverse and remand for a new trial.


I. Background



 Holmes's wife was the complainant. Early one morning, she called 911 for help and
reported the assault to Jackie Pickens, the police department's 911 officer. Officer Scott
Barnes responded to the call. Upon arriving at the residence, Officer Barnes spoke with the
complainant and saw her injuries. She had a mark on the side of her face, an abrasion on the
upper part of her thigh, and bruising on her arm. Officer Barnes described her as being
"scared, crying, [and] upset[.]" He then spoke with Holmes and ultimately arrested him. 
Officer Barnes described Holmes as being "intoxicated, uncooperative, and arrogant." 

 During the guilt-innocence phase of trial, the State presented two exhibits, the 911
tape and the event videotape, that are central to Holmes's ineffective assistance argument.

Both tapes were played for the jury. The audio portion of the event videotape, which was
recorded from a camera in Officer Barnes's patrol car, contained conversations at the scene
between Officer Barnes and the complainant and between Officer Barnes and Holmes. The
video images consisted essentially of the residence's exterior, the streets that the patrol car
traveled returning to the police station, and the outside of the police station. Shortly after the
conclusion of Officer Barnes's testimony describing events contained in the videotape, both
parties rested. 

 The complainant did not testify. At the beginning of trial, defense counsel indicated
that he would call the complainant as a witness. The State, however, explained to the court
that the complainant had retained counsel and would be invoking her Fifth Amendment
protections. The court reminded defense counsel that he could not call a witness knowing
that the witness would invoke those rights. Defense counsel replied: "Okay. I'll withdraw
that." The trial court also granted the State's motion in limine regarding the complainant's
signing a non-prosecution affidavit.

 After conviction and sentencing, Holmes filed a motion for new trial alleging that he
received ineffective assistance of counsel. At the hearing on Holmes's motion, defense
counsel and Holmes both testified. Counsel testified that he did not review the State's
evidence against Holmes, including the 911 tape and the videotape, prior to jury selection.
Counsel agreed that his failure to review the file was not reasonable and that his
representation of Holmes fell below expected standards. The trial court denied Holmes's
motion for new trial.

II. Standard of Review


 To prove ineffective assistance of counsel, an "appellant must establish both that his
trial counsel performed deficiently and that the deficiency operated to prejudice him." State
v. Morales, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008) (citing Strickland v. Washington,
466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). A reviewing court "looks to the
totality of the representation and the particular circumstances of each case" when considering
whether counsel provided ineffective assistance. Thompson v. State, 9 S.W.3d 808, 813
(Tex. Crim. App. 1999). In evaluating deficient performance, "reviewing courts must not
second-guess legitimate strategic or tactical decisions made by trial counsel in the midst of
trial, but instead 'must indulge a strong presumption that counsel's conduct falls within the
wide range of reasonable professional assistance[.]'" Morales, 253 S.W.3d at 696 (quoting
Strickland, 466 U.S. at 689). To satisfy the second Strickland prong, an appellant must show
that trial counsel's deficient performance prejudiced appellant's defense. Bone v. State, 77
S.W.3d 828, 833 (Tex. Crim. App. 2002). To do so, the appellant must show there is a
reasonable probability that the result of the proceeding would have been different but for trial
counsel's deficient performance. Id. (citing Mitchell v. State, 68 S.W.3d 640, 642 (Tex.
Crim. App. 2002)). "A reasonable probability is a probability sufficient to undermine
confidence in the outcome." Thompson, 9 S.W.3d at 812.

III. Deficient Performance


 We consider first whether trial counsel's professional assistance was deficient. On
appeal, Holmes argues that trial counsel failed to conduct appropriate pretrial discovery or
investigation, that counsel's lack of pretrial discovery adversely affected his decision about
the State's plea offers, that counsel made no efforts to exclude the 911 tape or the tape made
during his arrest, that counsel was unprepared at trial because of his lack of discovery or
investigation, that counsel failed to have a trial strategy, and that counsel failed to call the
complaining witness.

 At the hearing on Holmes's motion for new trial, counsel testified that he did not
review the State's evidence against Holmes prior to jury selection. He "surmised" a 911 tape
probably existed and testified he told Holmes about that probability. When asked why he did
not review the State's file or evidence, counsel stated: "Well, quite frankly, I expected the
case to either not go to trial or that the complaining witness would testify, which would [have
been] very, very beneficial to Mr. Holmes." At the new-trial hearing, counsel agreed that his
failure to review the file was not reasonable and that his representation of Holmes fell below
expected standards. He further testified that his failure to review the file was not part of any
trial strategy; instead, his strategy was "[t]hat the case would not be tried." He agreed that
an attorney is unable to adequately represent a client at trial if the attorney has not reviewed
the file or prepared for trial. 

 Counsel also testified that the 911 tape was the only evidence he expected the State
to have, but he did not review that tape. He conceded that when faced with the introduction
of the event videotape at trial, he made no objections to its introduction, had no reason for
his failure to object, and did not file a motion for continuance. Counsel testified that if he
had conducted discovery, he "would have been much more prepared to make the proper
objections at the proper time." Counsel further testified that he had no reason for his failure
to call character witnesses during the punishment phase of trial, that he did not discuss with
Holmes the need for character witnesses, but that he would have encouraged the calling of
character witnesses had he conducted discovery and reviewed the video.

 At the new-trial hearing, counsel further explained that the State made a 120-day plea-bargain offer between jury selection and commencement of trial and that he conveyed this
offer to Holmes. (1) Counsel testified that he was reasonably sure Holmes would have taken
the offer had counsel properly explained the evidence to Holmes. Holmes testified that he
would have taken the offer if he had known about the video.

 The United States Supreme Court explained that "counsel has a duty to make
reasonable investigations or to make a reasonable decision that makes particular
investigations unnecessary." Wiggins v. Smith, 539 U.S. 510, 521-22, 123 S.Ct. 2527, 156
L.Ed.2d 471 (2003). A defendant is entitled to rely on his counsel "'to make an independent
examination of the facts, circumstances, pleadings and laws involved and then to offer his
informed opinion as to what plea should be entered' based upon an informed investigation
. . . ." Ex Parte Briggs, 187 S.W.3d 458, 469 (Tex. Crim. App. 2005) (quoting Von Moltke
v. Gillies, 332 U.S. 708, 721, 68 S.Ct. 316, 92 L.Ed. 309 (1948)).

 In Johnson v. State, the Austin Court of Appeals found that trial counsel's
performance was deficient because counsel failed to discover and object to the introduction
of an audiotape and that the deficient performance prejudiced the defendant. 172 S.W.3d 6,
19-20 (Tex. App.-Austin 2005, pet. ref'd). The Johnson Court explained:

 Trial counsel's deficiency in failing to discover a key piece of evidence strikes
at the heart of the effective assistance of counsel. Seeking and obtaining
inculpatory--or exculpatory--statements in the defendant's own voice is an
essential part of case investigation, preparation for trial, and trial strategy. A
request by the defense for the defendant's own "statements" is a fundamental
aspect of discovery . . . . This discovery also permits defense counsel to make
informed judgments regarding the strength of the prosecution's case. The
decision to call witnesses--and particularly whether to call the defendant
herself--must be informed by all the evidence to be presented, especially by
such compelling evidence as a recorded statement. In such light, a lengthy
recorded statement of the appellant's own voice appears fundamental to trial
preparation and strategy.

 

Id. at 19. 

 In this case, counsel admittedly failed to investigate and discover evidence, failed to
develop a trial strategy, failed to be prepared for trial, and failed to object or seek a
continuance. We agree with counsel that his performance was deficient. See Wiggins, 539
U.S. at 534. We next consider whether the deficient performance prejudiced Holmes.


IV. Prejudice


 To establish prejudice, Holmes must show there is a reasonable probability that the
result would have been different but for trial counsel's deficient performance. See Bone, 77
S.W.3d at 833. A probability is reasonable if it is sufficient to undermine confidence in the
outcome. Thompson, 9 S.W.3d at 812. Stated differently, prejudice to the appellant is
judged by "whether counsel's conduct so undermined the proper functioning of the
adversarial process that the trial cannot be relied on as having produced a just result." Ex
parte Chandler, 182 S.W.3d 350, 353 (Tex. Crim. App. 2005) (quoting Strickland, 466 U.S.
at 686)). In our review, we consider the "totality" of counsel's representation. See
Thompson, 9 S.W.3d at 813; see also Hall v. State, 161 S.W.3d 142, 155 (Tex.
App.-Texarkana 2005, pet. ref'd) ("When addressing this second step of Strickland, the
reviewing court should examine counsel's errors not as isolated incidents, but in the context
of the overall record."). 

 Among other contentions, Holmes asserts he was prejudiced because he was unable
to make an informed decision regarding plea offers and because counsel failed to review the
State's evidence, develop a trial strategy, and prepare for trial. We agree.

 In State v. Williams, the Corpus Christi Court of Appeals determined that the failure
of trial counsel to fully explain the State's offer of deferred adjudication "effectively denied
appellee the opportunity to make an informed decision about whether to accept or reject the
offer." 83 S.W.3d 371, 375 (Tex. App.-Corpus Christi 2002, no pet.). Williams found
prejudice existed because the defendant, who testified he would have taken the offer had
counsel explained it to him, likely would have received deferred adjudication rather than the
five-year prison sentence he received at trial. Id.

 In this case, defense counsel testified about the effect that his lack of investigation had
on Holmes's rejection of the 120-day plea-bargain offer. When asked whether the outcome
of the case would have been different had he made Holmes aware of the evidence, counsel
stated:

 I'm reasonably sure that he would have taken the offer if I had conducted my
discovery properly and laid it out to him the way it turns out in the actual trial,
especially the recording of his conversation with the police officer from the
time he arrived until the time they got him to the jail. That was a very
devastating, rambling on [conversation] by an obviously intoxicated
individual.

Counsel indicated that the tape's harm to Holmes came from showing how he acted in the
police officer's presence. When asked whether the outcome of the trial would have been
different had counsel reviewed the video, listened to it, and relayed that information to
Holmes, counsel reiterated: "Definitely. . . . I think he would have accepted the offer." 

 Holmes stated that he was not aware of the video until trial and, upon seeing it played
at trial, was embarrassed and shocked. Holmes also testified that he would have accepted
the 120-day offer had he known about the video tape and its contents. Instead, he received
a one-year sentence. Much like the Williams defendant, Holmes was denied the opportunity
to make an informed decision about the State's offer. See Williams, 83 S.W.3d at 375. 

 The prejudice caused by counsel's deficient performance, however, extended beyond
Holmes's rejection of the 120-day plea-bargain offer. See Johnson, 172 S.W.3d at 19
(explaining "ripple" effect of failure to investigate). At the beginning of trial, counsel
learned about the video and also determined that he would not call the complaining witness
because her attorney contended she would be exercising her Fifth Amendment rights if
called. Counsel, however, did not seek a continuance for additional time to review and
evaluate the video, to determine whether to call Holmes, or otherwise to prepare a response
to the tape, even though he knew he would have no favorable testimony from the
complaining witness. As Johnson explained, without sufficient time to review a tape, "[n]o
defense lawyer, regardless of talent, can incorporate such a material item of evidence into a
defense strategy [and] prepare for examination based on its admission. . . ." Johnson, 172
S.W.3d at 20. "A defendant is entitled to plan trial strategy based upon full disclosure. It
cannot be effective trial strategy to forego trial strategy." Id. at 19. Because counsel did not
investigate, discover, and review the tape, he prepared no trial strategy based on full
disclosure.

 Further, counsel acknowledged that had he performed proper discovery, such as
reviewing the tape, he would have been "prepared to make the proper objections at the proper
time." He also testified that he would have encouraged the calling of character witnesses for
the sentencing phase of trial, which occurred shortly after the jury reached its verdict. (2) 

 Thus, counsel's failure to investigate and discover an important and damaging piece
of evidence precluded Holmes's making an informed decision about the State's plea-bargain
offer and adversely affected counsel's trial strategy and preparation as described above. In
our view, Holmes has shown that there is a reasonable probability-one undermining
confidence in the outcome-that the result would have been different but for counsel's
deficient performance. Because Holmes has established both showings required by 
Strickland, we find that he received ineffective assistance of counsel and sustain his issue. 
Accordingly, we reverse the trial court's judgment and remand this case for a new trial.

 REVERSED AND REMANDED. 

 ____________________________

 HOLLIS HORTON

 Justice


Submitted on July 28, 2008

Opinion Delivered February 4, 2009

Publish


Before McKeithen, C.J., Kreger and Horton, JJ.
1. Prior to trial, the State offered a 30-day plea bargain that trial counsel did not present
to Holmes. At the new-trial hearing, counsel explained that Holmes was on probation for a
felony offense and could not have accepted that offer prior to the expiration of his probation. 
Therefore, counsel considered this offer "irrelevant." Holmes testified that he "probably"
would have accepted the 30-day offer. See Dickerson v. State, 87 S.W.3d 632, 638 (Tex.
App.-San Antonio 2002, no pet.) (finding no proof of prejudice to the defendant when the
defendant did not state unconditionally that he would have accepted the offer). On appeal,
however, he does not argue that he would have accepted the offer. 
2. The case was tried during the morning of June 6, 2007. The jury returned its verdict
at 12:07 p.m., and the court recessed until 1:30 p.m., when the punishment phase began.